Filed 7/28/25  Romel v. Stone's Pet Shop CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CHARLI ROMEL, | H052597 |
| Plaintiff and Appellant, | (Monterey County Super. Ct. No. 22CV002705) |
| v. | |
| STONE'S PET SHOP et al., | |
| Defendants and Respondents. | |

Plaintiff Charli Romel sued Stone's Pet Shop and its two owners (collectively, Defendants) alleging Labor Code violations, sexual harassment, and other claims.  A bench trial was conducted, and after Romel rested, Defendants moved for judgment on all claims.  Concluding, among other things, that Romel was an independent contractor, the trial court granted the motion, denied her claims, and entered judgment in favor of Defendants.  Romel appeals, arguing primarily that the trial court erred in concluding that she was an independent contractor.  As explained below, we agree that Defendants failed to prove that Romel was an independent contractor.  However, we conclude that the trial court's rulings are justified on other grounds and therefore affirm the judgment.

## I. BACKGROUND

In October 2016, Stone's Pet Shop hired Romel to work as a bather in a grooming facility connected to a store.  Romel subsequently became interested in becoming a

groomer. Consequently, when Tom Radcliffe, one of the pet shop's owners, asked if she would like to become a groomer, Romel responded "that would be a great idea." Romel began working as groomer in February 2017 and continued working at the shop as a groomer until October 2019 when the shop stopped offering grooming services and instead began renting tables and grooming rooms.

When Romel became a groomer, the pet shop treated her as an independent contractor rather than an employee, and she enjoyed considerable independence. Defendants provided minimal supervision, and they allowed groomers to set their own hours and use their own equipment. In early 2019, Romel began to consider opening her own grooming business. In June, she incorporated a company, and in October, three days after leaving the pet shop, she opened her own salon.

Almost three years later, in September 2022, Romel sued the pet shop and its owners, Tom and Louise Radcliffe. She asserted two claims for sexual harassment, one for quid pro harassment and the other for a hostile work environment, as well as whistleblower retaliation under the Labor Code. In addition, Romel claimed nonpayment of wages, nonpayment of overtime, and failure to make timely payments in violation of the Labor Code and wage orders. Finally, Romel claimed both intentional and negligent interference with her salon.

In July 2024, the court held a bench trial. Romel presented her case over the course of three days. In attempting to show that Defendants exercised control and direction over her work, Romel presented testimony that the pet shop assigned customers to groomers, collected fees, and decided how to split those fees with groomers. However, on cross-examination, Romel admitted that Tom Radcliffe visited the grooming area only a few times a week and for less than an hour at a time, and another groomer testified that groomers set their own rates, set their own schedules, and bought their own supplies.

In support of her harassment claims, Romel presented testimony concerning inappropriate conduct by Tom Radcliffe. According to Romel, shortly after she started,

2

Radcliffe asked her out for drinks while his wife was out of town. Romel also testified that, when Radcliffe was in the grooming area, he frequently rubbed her shoulder, poked and punched her and other female groomers, and made sexual jokes. In addition, at the company's Christmas parties he gave sex objects as gifts and one time dressed up as a dog and asked the groomers to yank his leash and say he was a bad boy.

After Romel rested her case, Defendants moved for judgment under Code of Civil Procedure section 631.8. At the ensuing hearing, the trial court found that the evidence did not support the quid pro quo sexual harassment claim, and stated that it was not persuaded that Defendants had retaliated against Romel. The court also found that Romel was an independent contractor rather than an employee, noting that she supplied almost all of the equipment and tools she used, the work was done without supervision, and beyond scheduling Defendants exercised no control. Finally, the trial court stated that it "found credible some of Plaintiff's claims of conduct," but nonetheless rejected Romel's hostile work environment claim on the ground that she was an independent contractor and there was no employer/employee relationship. The trial court did not address whether dog grooming was in the ordinary course of the pet shop's business or whether Romel was customarily engaged in an independently established trade.

As apparently no statement of decision was requested, the trial court did not issue a statement. Instead, on August 2, 2024, the court issued an order on Defendants' motion for judgment. The order stated that the "[e]vidence presented by Plaintiff and the reasonable inferences derived therefrom in Plaintiff's favor were deemed insufficient to establish" Romel's sexual harassment, whistleblower, and interference claims. The order also stated that the evidence presented by Romel failed to establish "that Plaintiff was an employee, and therefore Plaintiff is not entitled to any payment" of wages, overtime compensation, or waiting time penalties under the Labor Code.

3

On August 2, 2024, the same day as the order on the motion for judgment, the trial court entered judgment in favor of Defendants and awarded them costs.  Romel filed a timely notice of appeal.

## II.  DISCUSSION

Romel argues that the trial court erred in deciding that she was an independent contractor and also that, even if she were an independent contractor, she may claim a hostile work environment.  We agree on both points.  However, it is well-settled that on appeal we review " ' "the ruling, not the rationale" ' " and "may affirm on any basis supported by the record and the law."  (*Miller v. Roseville Lodge No. 1293* (2022) 83 Cal.App.5th 825, 831.)  As explained below, we conclude that the trial court's rulings are supported by the record and the law.

### A.  Code of Civil Procedure section 631.8

We begin with a brief discussion of Code of Civil Procedure section 631.8 (section 631.8), the provision under which Defendants moved for judgment after Romel rested.

Under section 631.8, "[a]fter a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment." (Code Civ. Proc., § 631.8, subd. (a).)  "The purpose of this rule is to enable the court to find that the evidence does not justify requiring the defense to produce evidence, and the court to weigh evidence and to make findings of fact.  [Citation.]"  (*In re Javier G.* (2006) 137 Cal.App.4th 453, 458.)  Accordingly, under section 631.8, a trial court " 'may enter judgment in favor of the defendant if the court concludes that the plaintiff failed to sustain its burden of proof,' " and, in deciding whether to do so, the court " 'assesses witness credibility and resolves conflicts in the evidence.' " (*Jones v Quality Coast, Inc.* (2021) 69 Cal.App.5th 766, 772 (*Jones*).)

When a judgment entered pursuant to section 631.8 is appealed, "[t]he trial court's findings of fact are reviewed under the substantial evidence standard." (*Jones*, *supra*, 69

4

Cal.App.5th at p. 773; but see *ibid*. [determinations on questions of law are subject to independent review].) Under the substantial evidence standard, the appellant faces a " ' "daunting burden." ' " (*Padideh v. Moradi* (2023) 89 Cal.App.5th 418, 438 (*Padideh*).) In applying substantial evidence review, "we view the record in the light most favorable to respondent, resolving all evidentiary conflicts and indulging all reasonable inferences to support the judgment." (*Ibid*.) Moreover, where the appellant bore the burden of proof on an issue, the standard is even more daunting. Where a trial court found that the appellant failed to satisfy its burden, the issue on appeal is " 'whether the evidence compels a finding in favor of the appellant as a matter of law.' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466 (*Sonic Manufacturing*).) To demonstrate that a finding is compelled, an appellant must show that the evidence supporting that finding was " '(1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Ibid*.)

### B. Independent Contractor

As Defendants recognized in the trial court and in their appellate brief, under our Supreme Court's decision in *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903 (*Dynamex*), which was codified in 2020 (Stats.2020, ch. 38, § 2), Defendants bore the burden of proving that Romel was an independent contractor under the so-called "ABC" test, which generally requires satisfaction of three conditions. (Lab. Code, § 2775, subd. (b)(1)(A)-(C); *Dynamex*, at p. 957.) As Romel has demonstrated, Defendants failed to establish two of these conditions.

Under the ABC test, for purposes of the Labor Code and Industrial Welfare Commission wage orders, an individual providing labor or services for pay is presumed to be an employee. (Lab. Code, § 2775., subd. (b)(1) ["For purposes of this code and the Unemployment Insurance Code, and for purposes of wage orders of the Industrial Welfare Commission, a person providing labor or services for remuneration shall be

5

considered an employee rather than an independent contractor unless the hiring entity demonstrates that all of the following conditions are satisfied . . ."].)  This presumption may be rebutted, and the individual deemed an independent contractor, if the "hiring entity" demonstrates satisfaction of three conditions:  "(A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for performance of the work and in fact.  [¶]  (B) The person performs work that is outside the usual course of the hiring entity's business.  [¶]  (C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performance."  (*Ibid*.)  As the first condition is often harder to determine, the Supreme Court has observed that it is often best to begin with the second and third conditions.  (*Dynamex*, *supra*, 4 Cal.5th at p. 963.)

Here, the second condition—that Romel performed work outside Defendants' usual course of business—was not satisfied.  In concluding that Romel was an independent contractor, the trial court discussed factors such as Romel's control over her schedule, the supplying of her own equipment, and the lack of any supervision that relate to whether she was subject to the pet shop's control and direction—the first, not the second, ABC condition.  Defendants defend the trial court's ruling on a different ground:  They contend that dog grooming was not part of their usual course of business based on assertions that they primarily sold pet supplies, offered grooming services at only one of their four locations, and only added this service to accommodate customer requests.  We need not consider whether these assertions are sufficient to establish that dog grooming was outside Defendants' usual course of business because Defendants fail to point to any evidence supporting these assertions.  Instead, they cite their counsel's representations during opening argument, which are not evidence and cannot satisfy their burden of proof.  We therefore conclude that Defendants failed to present substantial evidence that

6

dog grooming was outside their usual course of business and therefore did not satisfy the ABC test's second condition.

Defendants also failed to satisfy the test's third condition: that the worker in question "is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed." (Lab. Code, § 2775, subd. (b)(1)(C).) Defendants point to Romel's admissions on cross-examination that she began thinking about opening her own salon in early 2019, filed articles of incorporation for a new business in June, and opened her own salon in October, only days after leaving the pet shop. This evidence shows that dog grooming is a distinct trade and that at some point before 2019 Romel became capable of engaging in that trade independently. However, California courts have interpreted the third prong of the ABC test to require "an existing, not potential, showing of independent business operation." (*Garcia v. Border Transportation Group, LLC* (2018) 28 Cal.App.5th 558, 574; see also *Gonzales v. San Gabriel Transit, Inc*. (2019) 40 Cal.App.5th 1131, 1155 ["Critically, part C requires the hirer to show a worker *actually be engaged* in an independent business, *not merely that he or she could be*."].) Consequently, the evidence cited by Defendants did not satisfy the ABC test's third condition.

In short, Defendants did not prove the ABC test's second and third conditions and therefore failed to show Romel was an independent contractor.

## C. The Hostile Work Environment Claim

The trial court denied Romel's hostile work environment claim based in part on the ground that she was an independent contractor and there was no employer/employee relationship. Romel challenges this ruling, arguing that she was not an independent contractor and, even if she was, she was entitled to claim hostile work environment. We agree with both arguments: As shown above, Defendants failed to prove that Romel was an independent contractor, and, in any event, California law expressly prohibits harassment based on sex or gender of "a person providing services pursuant to a

7

contract." (Gov. Code, § 12940, subd. (j)(1) [prohibiting harassment].) However, in its order granting Defendants' motion for judgment, the trial court rejected Romel's hostile work environment claim on another ground: It "deemed insufficient" the evidence that Romel presented. Reviewing this ruling under the substantial evidence standard, we affirm.

As the trial court recognized, Romel presented testimony concerning inappropriate conduct by Tom Radcliffe. For example, she testified that Radcliffe would rub her shoulders, would poke and punch her and the other groomers, and made sexual jokes that made the groomers "all feel very uncomfortable." Romel also testified that Radcliffe gave out sex objects at the pet shop's Christmas party, frequently commented about body parts, and on one occasion dressed up in a dog costume and asked groomers to call him a bad boy. Moreover, another dog groomer corroborated Romel's testimony concerning the objects and the body part comments as well as noting additional inappropriate sexual comments directed at her.

However, in order to prevail on a hostile work environment claim, a plaintiff must do more than show inappropriate conduct. A plaintiff claiming a hostile work environment "must demonstrate that the conduct complained of was *severe enough or sufficiently pervasive* to alter the conditions and create a work environment that qualifies as hostile or abusive." (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 279.) Here, the inappropriate conduct was intermittent: Romel admitted that Radcliffe came to the grooming area only a few times a week and then only for an hour at a time Moreover, while Romel testified that Radcliffe engaged in inappropriate conduct whenever he was in the grooming area, the other groomer who testified at trial said that the conduct was "off and on" and "not like an everyday thing." In addition, when asked whether she had witnessed sexual harassment by Radcliffe, the other groomer responded "I can't honestly remember specific words or things" beyond the sex toys and some other sporadic "inappropriate" conduct.

8

Based on the other groomer's testimony, which for purposes of appeal we must credit over Romel's (*Padideh*, *supra*, 89 Cal.App.5th at p. 438), the trial court could have determined that Radcliffe's inappropriate conduct was only sporadic and that this sporadic conduct was not so severe that it altered the conditions of employment. Certainly, Romel's accusations of inappropriate conduct were not " ' "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Sonic Manufacturing*, *supra*, 196 Cal.App.4th at p. 466.)

We therefore conclude the denial of Romel's hostile work environment claim should be upheld.

## D. The Labor Code Claims

We also conclude that the trial court's denial of Romel's claims for unpaid wages, overtime, and waiting time penalties under the Labor Code should be affirmed, albeit for a slightly different reason. Both at the hearing on the motion for judgment and in the order on that motion, the trial court rejected Romel's claims on a ground—that she was an independent contractor rather than an employee—we have held erroneous. However, Defendants argue that the denial of these claims should be upheld on alternative ground asserted below: that Romel failed to prove that any wages were due her. We agree that Romel failed to present sufficient evidence to prove that any wages were due her.

At trial, Romel testified that she worked for ten hours six days a week, and assuming that she would have earned $25 per hour as an employee, she calculated that her lost wages, including overtime (but not waiting-time penalties), were $180,000. However, although Romel testified that $25 per hour was the "going rate" for groomers, she did not offer any reason why she, who had worked for commissions at the pet shop and then owned her own salon, would know the hourly rate at which groomers typically are paid, and therefore failed to provide an adequate foundation for her testimony. In addition, Romel failed to present any evidence concerning the commissions that she received while at the pet shop. As a consequence, Romel failed to present evidence

9

sufficient to prove either the wages to which she would have been entitled as an employee or that Defendants failed to pay her that amount.

We therefore conclude that Romel's Labor Code claims were properly denied.

## E. The Remaining Claims

The trial court denied Romel's quid pro quo harassment, whistleblower, and tortious interference claims on the ground that she failed to present sufficient evidence to prove them. Romel asserts that these claims "hinge[] on the threshold issue of Appellant's employment status." Because Romel makes this assertion without authority or argument, we could treat the assertion as abandoned. (See, e.g., *In re Phoenix H.* (2009) 47 Cal.4th 835, 845 [" ' "Contentions supported neither by argument nor by citation of authority are deemed to be without foundation and to have been abandoned." ' "]; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate," and the court will "treat the issue as abandoned"].) In addition, the trial court rejected these claims on other grounds: It found that Romel's quid pro quo harassment claim was not supported by the evidence, it rejected her whistleblower claim on the ground that her schedule was not changed in retaliation for making complaints about animal abuse, and it rejected her interference claims because it did not find her claims of lost business credible. As Romel has not challenged any of these rulings, we conclude that the trial court properly denied her quid pro quo harassment, whistleblower, and tortious interference claims.

Accordingly, we affirm the judgment in favor of Defendants on all of Romel's claims. However, because Romel has raised meritorious challenges to the trial court's rulings, Defendants' motion to dismiss is denied.

## III. DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

_____

BROMBERG, J.

WE CONCUR:

_____

DANNER, ACTING P. J.

_____

WILSON, J.

*Romel v. Stone's Pet Shop*
H052597